## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **MISTY CECE** and **SHANITA REED**, | : | |
| on behalf of themselves and all others | : | |
| similarly situated, | : | **CASE NO**. |
| | : | |
| Plaintiffs, | : | **CLASS ACTION COMPLAINT** |
| | : | |
| **v.** | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| **ST. MARY'S HEALTH CARE SYSTEM, INC.** | : | |
| and **HEALTHCARE FISCAL MANAGEMENT,** | : | |
| **INC.,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

Plaintiffs, MISTY CECE and SHANITA REED, on behalf of themselves and all others similarly situated, bring this action against Defendants ST. MARY'S HEALTH CARE SYSTEM ("St. Mary's") and HEALTHCARE FISCAL MANAGEMENT, INC. ("HFMI") (collectively "Defendants ") to obtain damages, restitution, and injunctive relief for the Class, as defined below, from the Defendants. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record.

## I.    NATURE OF THE ACTION

1.    This class action arises out of the recent ransomware attack and data breach that was perpetrated against Defendants HFMI, which held in its possession certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, "the Private Information") of the Plaintiffs and the putative Class Members, all of whom are patients of Defendant St. Mary's (the "Ransomware Attack").

2.     The Private Information compromised in the Ransomware Attack included highly sensitive information such as names, dates of birth, Social Security numbers, medical record numbers, account numbers and dates of service of patients who received care from St. Mary's from about November 2019 through April 2020.

3.     The Ransomware Attack was a direct result of Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect consumers' Private Information.

4.     Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

5.     In addition, Defendant HFMI (acting in the course and scope of its agency relationship with Defendant St. Mary's) and its employees failed to properly monitor the computer network and systems that housed the Private Information.  Had HFMI properly monitored its property, it would have discovered the intrusion sooner.

6.     Defendants maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendants' computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Defendants and thus Defendants were on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

7.     Defendants disregarded the rights of Plaintiffs and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure their data systems were protected against unauthorized intrusions; failing to disclose that they did not have adequately robust computer systems and security practices to safeguard Class Member Private Information; failing to take standard and reasonably available steps to prevent the Ransomware Attack; and failing to provide Plaintiffs and Class Members prompt and accurate notice of the Ransomware Attack.

8.     In addition, Defendants and their employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendants properly monitored their property, they would have discovered the intrusion sooner.

9.     Plaintiffs' and Class Members' identities are now at risk because of Defendants' negligent conduct since the Private Information that Defendants collected and maintained is now in the hands of data thieves.

10.     Armed with the Private Information accessed in the Ransomware Attack, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

11.     As a result of the Ransomware Attack, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class

Members must now and in the future closely monitor their financial accounts to guard against identity theft.

12.     Plaintiffs and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13.     Through this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed during the Ransomware Attack.

14.     Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendants' data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

15.     Accordingly, Plaintiffs bring this action against Defendants seeking redress for their unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence *per se*, (iii) breach of express contract, (iv) breach of implied contract, (v) breach of fiduciary duty, (vi) intrusion upon seclusion/invasion of privacy; and (vii) breach of confidence.

## II.     JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and members of the Proposed Class, including Plaintiffs, are citizens of states different from Defendant HFMI.

4

17.     Defendant HFMI has sufficient minimum contacts in North Carolina, as it is a domestic corporation organized under the laws of the State of North Carolina and has its principal place of business in North Carolina, thus rendering the exercise of personal jurisdiction by this Court proper and necessary.

18.     This Court has jurisdiction over Defendant St. Mary's. Through its business operations in this District, Defendant St. Mary's intentionally avails itself of the markets within this District to render the exercise of jurisdiction by this Court just and proper. Defendant St. Mary's has sufficient minimum contacts in North Carolina as it does business in the State of North Carolina (through, among other things, its agent HFMI) and the business being done in North Carolina directly relates to the subject of this lawsuit, thus rendering the exercise of personal jurisdiction by this Court proper and necessary.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District.

### III.     PARTIES

20.     Plaintiff MISTY CECE ("Cece") is and at all times mentioned herein was as individual citizen of the State of Georgia, residing in the city of Athens. Plaintiff Cece was a patient of St. Mary's and received notice of the Ransomware Attack from HFMI on or about June 26, 2020.  A copy of the notice she received is attached hereto as Exhibit A (the "Notice Letter").

21.     Plaintiff SHANITA REED ("Reed") is and at all times mentioned herein was as individual citizen of the State of Georgia, residing in the city of Athens. Plaintiff Reed was a patient of St. Mary's and received notice of the Ransomware Attack from HFMI on or about June 26, 2020.  A copy of the notice she received is attached hereto as Exhibit B.

5

22.     Defendant HFMI is a North Carolina corporation with its principal place of business at 1202 Washington St., Williamston, NC 27892.

23.     Defendant St. Mary's is a Georgia corporation with its principal place of business at 1230 Baxter Street, Athens, GA 30606.

## IV.     STATEMENT OF FACTS

**A.  Nature of Defendants' Businesses**

24.     Defendant St. Mary's is a non-profit healthcare system with three hospitals and numerous physician practices, including home health, hospice, outpatient services and classes.

25.     Defendant HFMI is a for-profit company which specializes in providing self-pay conversion and insurance eligibility services to clinics, physician groups and hospital systems, including St. Mary's.

26.     In the ordinary course of receiving health care services from Defendant St. Mary's, Plaintiff and Class members provide Defendant St. Mary's with sensitive, personal, and private information such as:

a.     name, address, phone number and email address;

b.     dates of birth;

c.     social Security numbers;

d.     information relating to individual medical history;

e.     medical record information;

f.     insurance information and coverage; and

g.     treatment details

6

27.     Defendant St. Mary's and Defendant HFMI, in the course of providing its financial services and acting as an agent of St. Mary's, maintain this Personal Information on their servers and within their data infrastructure.

28.     All of Defendant St. Mary's employees, staff, entities, sites, and locations may share patient information with each other for various purposes, as disclosed in the HIPAA compliant Notice of Privacy Practices ("Privacy Policy") that Defendants are required to maintain.

29.     The Privacy Policy is posted on Defendant St. Mary's website and is provided to every patient upon request.[1]

30.     Because of the highly sensitive and personal nature of the information Defendant St. Mary's acquires and stores with respect to its patients, Defendant St. Mary promises to: (1) maintain the privacy of patients' protected health information; (2) maintain the confidentiality of health information that identifies its patients; (3) follow the terms of the notice of privacy practices that Defendants has in effect at the time; (4) obtain patients' written authorization for uses and disclosures that are not identified by the privacy notice; and (5) notify patients in the event it discovers a breach.

31.     Defendant St. Mary's, and by extension Defendant HFMI, agreed to and undertook legal duties to maintain the PHI entrusted to them by Plaintiffs and Class Members safely, confidentially, and in compliance with all applicable laws, including the Health Insurance Portability and Accountability Act ("HIPAA").

---

[1] https://www.stmaryshealthcaresystem.org/for-patients/patient-privacy/ (last visited July 12, 2020).

7

32.     Defendant HFMI, acting as an agent of Defendant St. Mary's, held the patient information collected by Defendant St. Mary's at its servers located in Williamston, North Carolina.[2]

33.     The patient information held by Defendants in their computer systems and networks included the Private Information of Plaintiffs and Class Members.

**B.     The Ransomware Attack**

34.     A ransomware attack is a type of malicious software that blocks access to a computer system or data, usually by encrypting it, until the victim pays a fee to the attacker.[3]

35.     At some point prior to April 13, 2020, computer hackers gained access to Defendant HFMI's computer servers and data infrastructure which resulted in widespread file encryption of files containing Protected Health Information that had been collected by Defendant St. Mary's.[4]

36.     The computer hackers exfiltrated data and files from Defendant HFMI's computer servers.

37.     The data and files exfiltrated from Defendant HFMI's computer servers included the PII and PHI of Plaintiffs and Class Members, including names, dates of birth, Social security numbers, medical record numbers, account numbers and dates of service

38.     The computer hackers also installed ransomware software on Defendant HFMI's computers and servers.

---

[2] *See* Notice Letter.
[3] https://www.proofpoint.com/us/threat-reference/ransomware.
[4] *See* Notice Letter.

39.     On or about April 13, 2020, the ransomware software was triggered, thereby locking out Defendant HFMI from access to its computer files, and alerting Defendant HFMI to the presence of the ransomware.[5]

40.     The cyber criminals responsible for the hack of Defendant HFMI's systems have been publicly identified themselves as the notorious Maze ransomware gang.[6]

41.     In recent years, the Maze ransomware gang has gained notoriety for "shaming" victims by exfiltrating and publishing organizations' sensitive data.[7]   In particular, the Maze ransomware gang has been known to extort businesses by publicly posting breached data on the Internet—and threatening full dumps of stolen data if the gang's "customers" do not pay for their files to be unencrypted.[8]

42.      On or about April 21, 2020, the Maze gang added Defendant HFMI to its website, where they identify hacked targets who are not cooperating with ransom demands.[9]

43.     As they have done in other cases, the Maze gang provided samples online of the data they had stolen.

---

[5] *Id.*

[6]  https://healthitsecurity.com/news/magellan-health-data-breach-victim-tally-reaches-365k-patients (reporting that the Maze hacking group posted a zip file with data allegedly stolen from HFM during a ransomware attack in April)(last visited July 11, 2020).

[7] https://searchsecurity.techtarget.com/news/252480334/Maze-ransomware-gang-pledges-to-stop-attacking-hospitals (last visited July 11, 2020).

[8] https://arstechnica.com/information-technology/2020/01/dozens-of-companies-have-data-dumped-online-by-ransomware-ring-seeking-leverage/ (last visited July 11, 2020).

[9] https://healthitsecurity.com/news/beaumont-health-reports-2019-data-breach-impacting-114k-patients ("The notorious Maze ransomware hacking group has posted a sample of data they claim to have stolen from revenue cycle management vendor Healthcare Fiscal Management. Much like with previous attacks, the group posted a zip file with data allegedly stolen from HFM during an attack.") (last visited July 11, 2020).

44.     On or about June 26, 2020--more than two months after becoming aware of the breach—Defendant HFMI finally notified affected persons of the Ransomware Attack.  The Notice of Data Incident ("Notice") stated in relevant part the following:

### Notice of Data Incident

**What Happened?** On April 13, 2020, HFMI became aware of a data security incident, including ransomware, that impacted portions of its server and data infrastructure. HFMI immediately took its systems offline and undertook efforts to restore its servers to a new hosting provider with additional high-level security mechanisms and monitoring, HFMI thereafter retained a professional forensic investigation form to determine the nature of the security compromise and identify any individuals whose personal information and/or protected health information may have been compromised.

**What Information Was Involved?** The forensic investigation determined that first access to HFMI's systems occurred on approximately April 12, 2020, with the ransomware launched on Aril 13, 2020. The data security incident may have resulted in unauthorized access to or acquisition of personal information, including names, date of birth and Social security numbers, as well as protected health information ,including medical record numbers, account numbers and dates of service that were provided to HFMI in connection with the provision of insured eligibility services for its clients between November 2019 through April 2020.  No direct medical diagnosis or clinical information was part of the breach.

**What We Are Doing.** As stated above, following the data security incident, HFMI immediately undertook efforts to restore the impacted servers to a new hosting provider. Backups and other information maintained by HFMA were used to enable near seamless restoration of security and services on the same day. HFMI has retained a forensic investigation firm to thoroughly investigate the incident and has confirmed that the information is no longer in possession of third party(ies) or accessible on the Internet. HFMI is providing this notice to you in accordance with applicable state law and Health Insurance Portability and Accountability Act (HIPAA) requirements. Please be advised that HFMI is continuing to work closely with leading security experts to identify and implement measures to further strengthen the security of their systems to help prevent this from happening in the future.[10]

---

[10] Notice of Data Breach (June 26, 2020).

45.     Upon information and belief, this notice was sent to 58,000 patients, including Plaintiffs, and has been posted on St. Mary's website.[11]

46.     Incredibly, Defendants had not publicly disclosed the security breach when Maze named HFMI online on or about April 21, 2020, and publicly posted the Private Information of Plaintiffs and Class Members. As one cybersecurity expert observed about another ransomware attack perpetrated by the Maze gang:

> The lack of disclosure obviously means that customers/clients/vendors /partners do not know that their data is now in the hands of cybercriminals and can be downloaded by anybody with an Internet connection….And that means they do not know that they should set up credit monitoring, notify their financial institution, be on the lookout for scams or spear phishing attempts.[12]

47.     "[T]he fact that the information is posted on a publicly accessible website puts victims at risk of others stealing the personal data," reported one news outlet about another Maze ransomware attack.[13]

48.     Overall, the Private Information of 58,000 patients was impacted in the Ransomware Attack, including the Private Information of Plaintiffs Cece and Reed.

49.     Despite learning of the Ransomware Attack on April 13, 2020, despite the fact that Defendants knew or should have known by April 21, 2020 that the Maze gang had exfiltrated and publicly dumped a sample of the stolen patient data online, breach notification letters were not sent to affected patients until June 26, 2020, almost two months after first learning of the breach.

---

[11] https://www.stmaryshealthcaresystem.org/news-releases/healthcare-fiscal-management-inc-notification-of-data-security-incident (last visited July 12, 2020)

[12] https://www.timesunion.com/business/article/Computer-breach-exposes-some-Community-Care-15067744.php (last visited July 12, 2020).

[13] *Id.*

50.     The June notification date was also more than two months after the Maze ransomware gang published a sampling of the Private Information online for all cyberthieves to access and well after the time period in which compromised breach victims could take prophylactic measures to safeguard their identities and Private Information.

51.     Defendants have not publicly acknowledged the exfiltration of the sensitive, private, and protected patient health information.  Defendants have instead (and incorrectly) informed consumers that "the information is no longer in the possession of third party(ies) or accessible via the Internet." See Notice of Data Breach (June 26, 2020).   Even now, Defendants' websites are silent about the data breach and the Maze gang.

**C.     St. Mary's Patient Privacy Policies.**

52.     As a healthcare service provider, Defendant St. Mary's is bound by HIPAA, which requires subject providers to comply with a series of administrative, physical security, and technical security requirements in order to protect patient information. Among other things, it mandates that medical providers develop, publish, and adhere to a privacy policy.

53.     Defendant recognizes its obligations under HIPAA along with the commensurate obligation to safeguard and protect patient PHI and PII:

> St. Mary's Health Care System, Inc. (including St. Mary's Hospital, St. Mary's Good Samaritan Hospital, St. Mary's Medical Group, St. Mary's Home Health Care/Hospice, St. Mary's Alzheimer's/Dementia Care, St. Mary's Highland Hills, St. Mary's Center for Wound Healing, St. Mary's Industrial Medicine, St. Mary's Outpatient Services and the Clute-Barrow-Nelson Pediatric Subspecialty Clinic) (collectively referred to in this Notice as "St. Mary's" or "We") is required by the Health Insurance Portability and Accountability Act of 1996, and the Health Information Technology for Economic and Clinical Health Act (found in Title XIII of the American Recovery and Reinvestment Act of 2009) (collectively referred to as "HIPAA"), as amended from time to time, to maintain the privacy of individually identifiable patient health information (this information is "protected health information" and is referred to herein as "PHI"). We are also required to provide patients with a Notice of Privacy Practices

regarding PHI. We will only use or disclose your PHI as permitted or required by applicable state law. This Notice applies to your PHI in our possession including the medical records generated by us.[14]

54.     Defendant St. Mary's assures consumers that "your health information is highly personal, and we are committed to safeguarding your privacy."[15]

55.     Defendant St. Mary's had an obligation created by HIPAA, contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

56.     Plaintiffs and Class Members provided their Private Information to Defendant St. Mary's with the reasonable expectation and mutual understanding that Defendant St. Mary's would comply with its obligations to keep such information confidential and secure from unauthorized access.

57.     Defendant St. Mary's data security obligations were particularly important given the substantial increase in ransomware attacks and/or data breaches in the healthcare industry preceding the date of the breach.

58.     Indeed, ransomware attacks, such as the one experienced by Defendants, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack.

59.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

---

[14] https://www.stmaryshealthcaresystem.org/assets/documents/wp-2013/09/stmh-hipaa-notice-of-privacy-practices-sep-2013.pdf(last visited 7/12/2020)
[15] *Id.*

13

60.     Defendants breached their obligations to Plaintiffs and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data infrastructure. Defendants' unlawful conduct includes, but is not limited to, their failure to:

a.      maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.      adequately protect patients' Private Information;

c.      properly monitor its own data security systems for existing intrusions;

d.      ensure that vendors with access to Defendants ' protected health data employed reasonable security procedures;

e.      ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

f.      implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

g.      implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

h.      implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

i.      protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j.     protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

k.     ensure compliance with HIPAA security standard rules by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

l.     train all members of Defendants' workforce effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of their workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

m.     render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR 164.304 definition of encryption).

61.     As the result of computer systems in need of security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing the ransomware virus, Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

62.     Accordingly, Plaintiffs and Class Members now face an increased risk of fraud and identity theft.

**D.     Ransomware Attacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identify Theft**

63.     Ransomware attacks, especially those perpetrated by the Maze gang involved here, also constitute data breaches in the traditional sense. For example, in a recent ransomware attack

on the Florida city of Pensacola, and while the City was still recovering from the ransomware

attack, the Maze hackers released 2GB of data files from the total 32GB of data that they claimed

was stolen prior to encrypting the City's network with the Maze ransomware. In the statement

given to a news outlet, the Maze hackers said, "*This is the fault of mass media who writes that we

don't exfiltrate data….*"[16]

64. Also, in a ransomware advisory, the Department of Health and Human Services

informed entities covered by HIPAA that "when electronic protected health information (ePHI) is

encrypted as the result of a ransomware attack, a breach has occurred because the ePHI encrypted

by the ransomware was acquired (i.e., unauthorized individuals have taken possession or control

of the information)."[17]

65. Ransomware attacks are also considered a breach under the HIPAA Rules because

there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "...the acquisition, access,
> use, or disclosure of PHI in a manner not permitted under the [HIPAA
> Privacy Rule] which compromises the security or privacy of the PHI." See
> 45 C.F.R. 164.40[18]

66. Other security experts agree that when a ransomware attack occurs, a data breach

does as well, because such an attack represents a loss of control of the data within a network.

---

[16] https://www.cisomag.com/pensacola-ransomware-hackers-release-2gb-data-as-a-proof/ (last visited July 12, 2020).
[17]*See* https://www.hhs.gov/sites/default/files/RansomwareFactSheet.pdf (last visited July 12, 2020).
[18]*See* https://onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203 (last visited July 12, 2020).

67.     Ransomware attacks are also Security Incidents under HIPAA because they impair both the integrity (data is not interpretable) and availability (data is not accessible) of patient health information:

> The presence of ransomware (or any malware) on a covered entity's or business associate's computer systems is a security incident under the HIPAA Security Rule. A security incident is defined as the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system. See the definition of security incident at 45 C.F.R. 164.304. Once the ransomware is detected, the covered entity or business associate must initiate its security incident and response and reporting procedures. See 45 C.F.R.164.308(a)(6).[19]

68.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GOA Report") in which they noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[20]

69.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[21]

70.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

---

[19]*See* https://www.hhs.gov/sites/default/files/RansomwareFactSheet.pdf (last visited July 12, 2020).
[20]*See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf  (last visited July 12) ("GAO Report").
[21]*See* https://www.identitytheft.gov/Steps (last visited July 12, 2020).

71.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[22]



---

[22] "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/2017, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php  (last visited July 12, 2020).

72.     What's more, theft of Private Information is also gravely serious. PII/PHI is a valuable property right.[23] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

73.     Theft of PHI, in particular, is gravely serious: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[24] Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

74.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when they is discovered, and also between when Private Information and/or financial information is stolen and when they is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that

---

[23] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).
[24] See Federal Trade Commission, Medical Identity Theft, http://www.consumer.ftc.gov/articles/0171-medical-identity-theft  (last visited July 12, 2020).

> attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

75. Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

76. As evidenced by the Maze Team's public posting of a sample of the stolen Defendants date, there is a strong probability that the entirety of the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

77. Medical information is especially valuable to identity thieves. According to account monitoring company LogDog, coveted Social Security numbers were selling on the dark web for just $1 in 2016 – the same as a Facebook account. That pales in comparison with the asking price for medical data, which was selling for $50 and up.[25]

78. Of recent, the medical and financial services industries have experienced disproportionally higher numbers of data theft events than other industries. Defendants therefore knew or should have known this and strengthened their data systems accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.**PLAINTIFFS' AND CLASS MEMBERS' DAMAGES**

---

[25] https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last visited July 12. 2020)

79.     To date, Defendants have done absolutely nothing to compensate Class Members for the damages they sustained in the Ransomware Attack. Defendants have merely offered identity monitoring services for a paltry 12 months by way of "*my*TrueIdentity" credit monitoring to patients whose data was stolen.[26]  The offer is wholly inadequate as it fails to provide for the fact that victims of Ransomware Attacks and other unauthorized disclosures commonly face multiple years of ongoing identity theft and they entirely fails to provide any compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' Private Information. Furthermore, Defendant HFMI's credit monitoring offer squarely places the burden on Plaintiffs and Class Members, rather than on the Defendant, to investigate and protect themselves from Defendants' tortious acts resulting in the Ransomware Attack.  Rather than automatically enrolling Plaintiffs and Class Members in credit monitoring services upon discovery of the breach, Defendants merely sent instructions to Plaintiffs and Class Members about actions they can affirmatively take to protect themselves.[27]

81.     Plaintiffs and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Ransomware Attack.

82.     Plaintiffs' Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Ransomware Attack.

83.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

---

[26] *See* Notice Letter.
[27] *See* Notice Letter.

84.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Ransomware Attack.

85.     Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

86.     Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

87.     Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Ransomware Attack.

88.     Plaintiffs and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Ransomware Attack. Numerous courts have recognized the propriety of loss of value damages in related cases.

89.     Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

90.     Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Ransomware Attack. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Ransomware Attack relating to:

a.      finding fraudulent charges;

b.      canceling and reissuing credit and debit cards;

c. purchasing credit monitoring and identity theft prevention;

d. addressing their inability to withdraw funds linked to compromised accounts;

e. taking trips to banks and waiting in line to obtain funds held in limited accounts;

f. lacing "freezes" and "alerts" with credit reporting agencies;

g. spending time on the phone with or at a financial institution to dispute fraudulent charges;

h. contacting financial institutions and closing or modifying financial accounts;

i. resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j. paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k. reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

91. Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of the Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

92. Further, as a result of Defendants' conduct, Plaintiffs and Class Members are forced to live with the anxiety that their Private Information —which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

23

93.     As a direct and proximate result of Defendants' actions and inactions, Plaintiffs and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

94.     Defendants' delay in identifying and reporting the Ransomware Attack caused additional harm. It is axiomatic that "[t]he quicker a financial institution, credit card issuer, wireless carrier or other service provider is notified that fraud has occurred on an account, the sooner these organizations can act to limit the damage. Early notification can also help limit the liability of a victim in some cases, as well as allow more time for law enforcement to catch the fraudsters in the act."[28]

95.     Indeed, once a Ransomware Attack has occurred, "[o]ne thing that does matter is hearing about a data breach quickly. That alerts consumers to keep a tight watch on credit card bills and suspicious emails. It can prompt them to change passwords and freeze credit reports. And notifying officials can help them catch cybercriminals and warn other businesses of emerging dangers. If consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves" (internal citations omitted).[29]

---

[28]*Identity Fraud Hits Record High with 15.4 Million U.S. Victims in 2016, Up 16 Percent According to New Javelin Strategy & Research Study*, Business Wire¸ https://www.businesswire.com/news/home/20170201005166/en/Identity-Fraud-Hits-Record-High-15.4-Million.

[29]Consumer Reports, The Data Breach Attack Next Door Security breaches don't just hit giants like Equifax and Marriott. Breaches at small companies put consumers at risk, too, January 31, 2019, https://www.consumerreports.org/data-theft/the-data-breach-next-door/

96.     Although their Private Information was improperly exposed on or about April 12, 2020 and published by the hackers on or about April 21, 2020, affected consumers were not notified of the Ransomware Attack until June 26, 2020, depriving them of the ability to promptly mitigate potential adverse consequences resulting from the Ransomware Attack.

97.     As a result of Defendants' delay in detecting and notifying consumers of the Ransomware Attack, the risk of fraud for Plaintiffs and Class Members has been driven even higher.

## VI.     CLASS ACTION ALLEGATIONS

98.     Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "Class") pursuant to Rule 23 (b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

99.     Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons who whose Private Information was compromised in the Ransomware Attack and who were sent Notice of the Ransomware Attack.

100.     Excluded from the Class are Defendants' officers and directors, and any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

101.     Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4).

102.     Numerosity. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time,

based on information and belief, the Class consists of approximately 58,000 consumers whose data was compromised in the Ransomware Attack.

103.     Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common question of law and fact include, without limitation:

a.     Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

b.     Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Ransomware Attack;

c.     Whether Defendants' data security systems prior to and during the Ransomware Attack complied with applicable data security laws and regulations;

d.     Whether Defendants' data security systems prior to and during the Ransomware Attack were consistent with industry standards;

e.     Whether Defendants owed a duty to Class Members to safeguard their Private Information;

f.     Whether Defendants breached its duty to Class Members to safeguard their Private Information;

g.     Whether computer hackers obtained Class Members' Private Information in the Ransomware Attack;

h.     Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

i.     Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendants' misconduct;

j.     Whether Defendants' conduct was negligent;

k.     Whether Defendants' conduct was *per se* negligent;

l.     Whether Defendants' acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

m.     Whether Defendants were unjustly enriched;

n.     Whether Defendants failed to provide notice of the Ransomware Attack in a timely manner; and

o.     Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

104.    <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class member, was compromised in the Ransomware Attack.

105.    <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

106.    <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

107. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

108. Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

109. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendants failed to timely notify the public of the Ransomware Attack;

b. Whether Defendants owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c. Whether Defendants' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.     Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

e.     Whether Defendants failed to take commercially reasonable steps to safeguard consumer Private Information; and

f.     Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Ransomware Attack.

110.   Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Ransomware Attack. Class Members have already been preliminarily identified and sent notice of the Ransomware Attack by Defendants.

## CAUSES OF ACTION

### FIRST COUNT
### Negligence
### (On Behalf of Plaintiffs and All Class Members)

111.   Plaintiffs re-alleges and incorporates by reference Paragraphs 1 through 110 above as if fully set forth herein.

112.   Defendants required Plaintiffs and Class Members to submit non-public personal information in order to obtain medical services.

113.   By collecting and storing this data in Defendants' computer property, and sharing and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which they could detect a breach of their

security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a ransomware attack.

114.    Defendants owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

115.    Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant St. Mary's and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a ransomware attack or data breach.

116.    Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1).  Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

117.    In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

118.     Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants is bound by industry standards to protect confidential Private Information.

119.     Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.     Failing to adequately monitor the security of their networks and systems;

c.     Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

d.     Allowing unauthorized access to Class Members' Private Information;

e.     Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

f.     Failing to timely notify Class Members about the Ransomware Attack so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

120.     It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in both the financial services and medical industry.

121.     It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

122.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Ransomware Attack.

123.    Defendants' negligent conduct is ongoing, in that they still hold the Private Information of Plaintiffs and Class Members in an unsafe and unsecure manner, and have not reported securing their servers that were breached in the Ransomware Attack (as evidenced by the data posted publicly online by the Maze gang). Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**SECOND COUNT**
**Negligence *Per Se***
**(On Behalf of Plaintiffs and All Class Members)**

124.    Plaintiffs re-alleges and incorporates by reference Paragraphs 1 through 110 above as if fully set forth herein.

125.    Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

126.    Pursuant to HIPAA, 42 U.S.C. § 1302d, *et seq*., Defendants had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information.

127.    Pursuant to HIPAA, Defendants had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." See definition of encryption at 45 C.F.R. § 164.304.

128.    Pursuant to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, Defendants had a duty to protect the security and confidentiality of Plaintiffs' and Class Members' Private Information.

129.    Defendants breached their duties to Plaintiffs and Class Members under the Federal Trade Commission Act, HIPAA, and the Gramm-Leach-Bliley Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

130.    Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

131.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

132.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they failing to meet its duties, and that Defendants' breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

133.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**THIRD COUNT**
**Breach of Express Contract**
**(On Behalf of Plaintiffs and All Class Members)**

134.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 110 above as if fully set forth herein.

33

135. Plaintiff and Class Members allege that they entered into valid and enforceable express contracts, or were express, foreseeable, and intended third party beneficiaries, of valid and enforceable express contracts with both Defendants.

136. As the persons whose sensitive Private Information was being stored by Defendant HFMI, Plaintiffs and Class Members are and were the intended and foreseeable third-party beneficiaries of the contract(s) between Defendant St. Mary's and Defendant HFMI, contract(s) which (upon information and belief) include obligations to keep sensitive Private Information (including without limitation HIPAA protected PII and PHI) private and secure.

137. The valid and enforceable express contracts that Plaintiffs and Class Members entered into with Defendants include Defendants' promise to protect nonpublic personal information given to Defendant St. Mary's or that Defendant St. Mary's gathers on its own from disclosure.

138. Under these express contracts, Defendants and/or affiliated healthcare providers, promised and were obligated to: (a) provide healthcare to Plaintiffs and Class Members; and (b) protect Plaintiff and the Class Members' PII/PHI: (i) provided to obtain such healthcare; and/or (ii) created as a result of providing such healthcare. In exchange, Plaintiffs and Class Members agreed to pay money for these services, and to turn over their Private Information.

139. Both the provision of healthcare and the protection of Plaintiffs' and Class Members' PII/PHI were material aspects of these contracts.

140. At all relevant times, Defendant St. Mary's expressly represented in its Privacy Policy that it would, among other things: (A) protect patients' medical information; (B) keep medical information private; (C) give notice of Defendants' legal duties and privacy practices with respect to medical information about patients, (D) follow the terms of the privacy notice that is

currently in effect; (E) to make any other uses and disclosures of medical information not covered by the Privacy Notice or the laws that apply to use only with written permission, and; F) notify patients in the event of a breach of unsecured medical information.[30]

141.    Defendants' express representations, including, but not limited to, express representations found in Defendant St. Mary's Privacy Policy, formed an express contract requiring both Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' PII/PHI.

142.    Consumers of healthcare value their privacy, the privacy of their dependents, and the ability to keep their PII/PHI associated with obtaining healthcare private. To customers such as Plaintiffs and Class Members, healthcare that does not adhere to industry standard data security protocols to protect PII/PHI is fundamentally less useful and less valuable than healthcare that adheres to industry-standard data security. Plaintiffs and Class Members would not have entered into these contracts with Defendants as a direct or third-party beneficiary without an understanding that their PII/PHI would be safeguarded and protected.

143.    A meeting of the minds occurred, as Plaintiffs and Class Members provided their PII/PHI to Defendants and paid for the provided healthcare in exchange for, amongst other things, protection of their PII/PHI.

144.    Plaintiffs and Class Members performed their obligations under the contract when they paid for their health care services and provided their PII/PHI.

_____

[30] https://www.stmaryshealthcaresystem.org/assets/documents/wp-2013/09/stmh-hipaa-notice-of-privacy-practices-sep-2013.pdf

145.    Defendants materially breached their contractual obligation to protect the nonpublic personal information Defendants gathered when the information was accessed and exfiltrated by unauthorized personnel as part of the Ransomware Attack.

146.    Defendants materially breached the terms of these express contracts, including, but not limited to, the terms stated in the Privacy Policy.  Defendants did not maintain the privacy of Plaintiff's and Class Members' PII/PHI as evidenced by HFMI's disclosure of the Ransomware Attack. Specifically, Defendants did not comply with industry standards, or otherwise protect Plaintiff's and the Class Members' PII/PHI, as set forth above.

147.    The Ransomware Attack was a reasonably foreseeable consequence of Defendants' actions in breach of these contracts.

148.    As a result of Defendants' failure to fulfill the data security protections promised in these contracts, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received healthcare and other services that were of a diminished value to that described in the contracts.  Plaintiffs and Class Members therefore were damaged in an amount at least equal to the difference in the value of the healthcare with data security protection they paid for and the healthcare they received.

149.    Had Defendants disclosed that their data security was inadequate or that they did not adhere to industry-standard security measures, neither the Plaintiffs, the Class Members, nor any reasonable person would have purchased healthcare from Defendant St. Mary's.

150.    As a direct and proximate result of the Ransomware Attack, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PII/PHI, the loss of control of their PII/PHI, the imminent risk of suffering additional damages in the future,

disruption of their medical care and treatment, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendants.

151. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Ransomware Attack.

**FOURTH COUNT**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and All Class Members)**

152. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 110 above as if fully set forth herein.

153. When Plaintiffs and Class Members provided their Private Information to Defendants in exchange for Defendants' services, they entered into implied contracts with Defendants pursuant to which Defendants agreed to reasonably protect such information.

154. Defendant St. Mary's solicited, offered, and invited Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

155. In entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

156. Class Members who paid money to Defendants reasonably believed and expected that Defendants would use part of those funds to obtain adequate data security. Defendants failed to do so.

157. Plaintiffs and Class Members would not have entrusted their Private Information to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure.

158.    Plaintiffs and Class Members would not have entrusted their Private Information to Defendants in the absence of their implied promise to monitor their computer systems and networks to ensure that they adopted reasonable data security measures.

159.    Plaintiffs and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

160.    Defendants breached their implied contracts with Class Members by failing to safeguard and protect their Private Information.

161.    As a direct and proximate result of Defendants' breach of the implied contracts, Class Members sustained damages as alleged herein.

162.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Ransomware Attack.

163.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**FIFTH COUNT**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and All Class Members)**

164.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 110 above as if fully set forth herein.

165.    In light of the special relationship between Defendants and Plaintiffs and Class Members, whereby Defendants became guardians of Plaintiffs' and Class Members' Private Information, Defendants became a fiduciary by their undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of

Plaintiffs' and Class Members' Private Information; (2) to timely notify Plaintiffs and Class Members of a Ransomware Attack and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and do store.

166.     As the agent of Defendant St. Mary's for purposes of storing, maintaining, and safeguarding Plaintiffs' and Class Members' PII and PHI, Defendant St. Mary's fiduciary duty is imputed to Defendant HFMI.

167.     Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of Defendants' relationship with their patients, in particular, to keep secure their Private Information.

168.     Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to diligently discovery, investigate, and give notice of the Ransomware Attack in a reasonable and practicable period of time.

169.     Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiffs' and Class Members' Private Information.

170.     Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of the Ransomware Attack.

171.     Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic PHI Defendants created, received, maintained, and transmitted, in violation of 45C.F.R. §164.306(a)(1).

172.     Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to implement technical policies and procedures for electronic information systems that

maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1).

173.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1).

174.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii).

175.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2).

176.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3).

177.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to ensure compliance with the HIPAA security standard rules by their workforces in violation of 45 C.F.R. § 164.306(a)(94).

178.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.

179.     Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to effectively train all Members of their workforces (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the Members of their workforces to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5).

180.     Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

181.     Defendants breached their fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' Private Information.

182.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Ransomware Attack, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Ransomware Attack for the

41

remainder of the lives of Plaintiffs and Class Members; and (vii) the diminished value of Defendants' services they received. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

### SIXTH COUNT
### Intrusion Upon Seclusion / Invasion of Privacy
### (On Behalf of Plaintiffs and All Class Members)

183.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 110 as if fully set forth herein.

184.     The State of North Carolina recognizes the tort of Intrusion upon Seclusion into Private Affairs and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977); *Toomer v. Garrett,* 155 N.C. App. 462, 479, 574 S.E.2d 76, 90 (2002).

185.     Plaintiffs and Class Members had a reasonable expectation of privacy in the Private Information Defendants mishandled. In failing to protect Plaintiffs' and Class Members' Private Information, and in intentionally misusing and/or disclosing their Private Information, Defendants acted with intentional malice and oppression and in conscious disregard of Plaintiffs' and Class Members' rights to have such information kept confidential and private.  Plaintiffs, therefore, seek an award of damages on behalf of themselves and the Class.

### SEVENTH COUNT
### Breach of Confidence
### (On behalf of Plaintiffs and all Class Members)

186.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 110 above as if fully set forth herein.

187.    At all times during Plaintiffs' and Class Members' interactions with Defendant St. Mary's, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' Private Information that Plaintiffs and Class Members provided to Defendant St. Mary's.

188.    As the agent of Defendant St. Mary's for purposes of storing, maintaining, and safeguarding Plaintiffs' and Class Members' PII and PHI, Defendant St. Mary's duty to maintain confidence is imputed to Defendant HFMI.

189.    As alleged herein and above, Defendants' relationship with Plaintiffs and Class Members was governed by terms and expectations that Plaintiffs' and Class Members' Private Information would be collected, stored, and protected in confidence, and would not be disclosed the unauthorized third parties.

190.    Plaintiffs and Class Members provided their respective Private Information to Defendants with the explicit and implicit understandings that Defendants would protect and not permit the Private Information to be disseminated to any unauthorized parties.

191.    Plaintiffs and Class Members also provided their Private Information to Defendants with the explicit and implicit understandings that Defendants would take precautions to protect that Private Information from unauthorized disclosure, such as following basic principles of protecting their networks and data systems, including employees' email accounts.

192.    Defendants voluntarily received in confidence Plaintiffs' and Class Members' Private Information with the understanding that Private Information would not be disclosed or disseminated to the public or any unauthorized third parties.

43

193. Due to Defendants' failure to prevent, detect, avoid the Ransomware Attack from occurring by, *inter alia*, following best information security practices to secure Plaintiffs' and Class Members' Private Information, Plaintiffs' and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

194. As a direct and proximate cause of Defendants' actions and/or omissions, Plaintiffs and Class Members have suffered damages.

195. But for Defendants' disclosure of Plaintiffs' and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendants' Ransomware Attack was the direct and legal cause of the theft of Plaintiffs' and Class Members' Private Information, as well as the resulting damages.

196. The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of Defendants' unauthorized disclosure of Plaintiffs' and Class Members' Private Information. Defendants knew their computer systems and technologies for accepting and securing Plaintiffs' and Class Members' Private Information had numerous security vulnerabilities.

197. As a direct and proximate result of Defendants' breaches of confidence, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and

future consequences of the Ransomware Attack, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Ransomware Attack for the remainder of the lives of Plaintiffs and Class Members; and (vii) the diminished value of Defendants' services they received .

198. As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a. For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

b. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

c. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Ransomware Attack;

d.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

e.    Ordering Defendants to pay for not less than seven years of credit monitoring services for Plaintiffs and the Class;

f.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.    For an award of punitive damages, as allowable by law;

h.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.    Pre- and post-judgment interest on any amounts awarded; and

j.    Such other and further relief as this court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: July 13, 2020                    Respectfully submitted,

                                        */s/ Joel Rhine*
                                        Joel Rhine
                                        North Carolina Bar No. 16028
                                        Martin A. Ramey
                                        North Carolina Bar No. 33617
                                        **RHINE LAW FIRM, P.C.**
                                        1612 Military Cutoff Rd., Suite 300
                                        Wilmington, NC 28403
                                        Tel.: (910) 772-9960
                                        Email: jrr@rhinelawfirm.com
                                             mjr@rhinelawfirm.com

                                        Gary E. Mason*
                                        David K. Lietz*
                                        **MASON LIETZ & KLINGER LLP**

46

5301 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Tel: (202) 429-2290
Email: gmason@masonllp.com
        dlietz@masonllp.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Tel.: (312) 283-3814
Email: gklinger@masonllp.com

*pro hac vice to be filed*                    *Attorneys for Plaintiffs*